UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.   Case No. 8:21-cv-1621-KKM-JSS

APPROXIMATELY $1,899,663.50
SEIZED FROM FIRST INTERNET
BANK ACCOUNT NUMBER 301680767

    Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States of America brings this complaint and alleges upon information and belief as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), approximately $1,899,663.50 seized from First Internet Bank account number 301680767 (the Defendant Funds), because the funds constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud) and are, therefore, subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1355(b)(1), because pertinent acts or omissions giving rise to the forfeiture occurred in this District.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). The United States will then execute the warrants on the Defendant Funds pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6. The Defendant Funds consist of approximately $1,899,663.50 seized from First Internet Bank account number 301680767, held in the name of victim D.H. PA. The funds were seized pursuant to a seizure warrant issued by this Court on May 28, 2021, after a probable cause finding that the contents of the account

constituted proceeds of violations of 18 U.S.C. § 1343 (wire fraud). The funds are being held in the Treasury Suspense Account.

## BASIS FOR FORFEITURE

7. Pursuant to 18 U.S.C. § 1343, it is a crime to engage in wire fraud. That statute makes it unlawful to devise any scheme or artifice to defraud, or to obtain money by means of false or fraudulent pretenses, representations, or promises, if the person transmits or causes to be transmitted by means of wire communication in interstate or foreign commerce any writings for the purpose of executing such scheme or artifice. 18 U.S.C. § 1343.

8. The Defendant Funds are proceeds of, or traceable to, a wire fraud scheme that operated in violation of 18 U.S.C. § 1343, as described below. Because the Defendant Funds represent proceeds of a violation of 18 U.S.C. § 1343, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7). "Specified unlawful activity," is defined in 18 U.S.C. § 1956(c)(7) to include offenses listed in 18 U.S.C. § 1961(1), which, in turn, includes wire fraud conducted in violation of 18 U.S.C. § 1343.

9. As required by Rule G(2)(f), the facts set forth below support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to

3

show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud.

10. Specific details of the facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by United States Department of Homeland Security, United States Secret Service (USSS) Special Agent Bryan Halliwell, who states as follows:

## FACTS

11. The personal identifying information (PII) of D.H., as well as information for what appears to be D.H.'s related business, D.H., PA, was used to defraud Kabbage, Inc., an authorized lender of the U.S. Small Business Administration (SBA), of $1,893,292.00 in COVID-19 loan proceeds allocated under the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The fraudulently obtained funds were then deposited into the First Internet Bank account number 301680767, held in the name of victim D.H. PA (the Subject Account), which was likewise created under the stolen name and identifiers of D.H. The actions and statements of the person or persons impersonating the D.H. were intended and designed to mislead and defraud Kabbage, Inc., First Internet Bank, and the SBA. The theft of D.H.'s identity was orchestrated by a criminal network operating, at least partially, within the Middle District of Florida.

A.  BACKGROUND REGARDING THE PPP

12.  In March 2020, the CARES Act was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program (PPP), and the full principal amount of the loans could qualify for forgiveness.

13.  Borrows were required to use PPP loan proceeds for enumerated purposes, including payroll costs,[1] rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds subjects the borrower to additional liability, such as charges for fraud.

14.  Under the PPP, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considers the borrower's aggregate payroll costs from the preceding twelve months for all domestic employees.[2] Once an

---

[1] Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

[2] The payroll-based formula expressly excluded (i) any compensation of an employee whose principal place of residence is outside of the United States; and (ii) the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

average monthly payroll cost is established, the borrower multiplies that amount by 2.5 to arrive at the total maximum PPP loan amount.

**B.     THE PPP APPLICATION PROCESS: SBA FORM 2483**

15.    To apply for a PPP loan, potential borrowers electronically submit an SBA Form 2483 with supporting payroll documentation to a financial institution that administers the loan and serves as custodian of the funds. On the SBA Form 2483, an authorized representative must make several certifications about his business operations and related information. Those certifications include that: (i) the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

16.    Further, when submitting the SBA Form 2483, the authorized representative certified that, should he knowingly use the PPP funds for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant must also certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents.[3] Such

---

[3] Borrowers must submit such documentation as is necessary to establish eligibility for the loan amount. Examples of such documentation includes payroll tax filings (*e.g.*, IRS Forms 941), payroll processor records, IRS Forms 1099-MISC, bank records, or other records

6

supporting documents could include payroll tax filings with the Internal Revenue Service, such as the Employer's Quarterly Federal Tax Return or the "IRS Form 941."

17. Finally, the applicant must certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

### C. THE INVESTIGATION

18. On or about February 1, 2021, SA Halliwell received documentation from the SBA that D.H., through his business, D.H., PA, seemingly applied for and received PPP funds from SBA authorized lender Kabbage, Inc. multiple times, despite the PPP application and rules prohibiting applicants from receiving PPP funds more than once.

19. The SBA provided documentation for 3 separate PPP loans applied for in D.H.'s business name, D.H., PA, including SBA PPP loan # 4337898003 (the D.H., PA PPP application). SA Halliwell reviewed this application which asserted that D.H., PA maintained 82 employees and realized

---

sufficient to demonstrate the qualifying payroll amount. As detailed above, the applicant, by submitting such documentation in support of the SBA Form 2483, affirms their veracity.

7

salaries/wages/tips/compensation of approximately $9,087,804.67 in 2019, prior to the COVID-19 pandemic.

20. The D.H., PA PPP application was submitted to Kabbage, Inc. from Internet Protocol (IP) Address 173.168.134.204 on June 29, 2020 at 4:17:40 PM (EST). A reverse lookup of this IP address via publicly available internet tools found that it resolved to a Spectrum account in Tampa, Florida.

21. The D.H., PA PPP application utilized D.H.'s Social Security number and also used D.H., PA's lawfully assigned Employer Identification Number (EIN). The application listed D.H.'s current home address in Hillsborough County, which could have facilitated the PPP's approval incident to public records checks conducted by SBA loan processors.

22. According to the Florida Division of Corporations, D.H., PA is an active business pursuant to formal business filings and has been so since on or about October 3, 2016.

23. The D.H., PA PPP application was approved and, on or about July 6, 2020, SBA PPP loan # 4337898003 in the amount of $1,893,292.00 (the D.H., PA PPP loan) was sent via Automated Clearing House (ACH) transfer from Kabbage, Inc. to the Subject Account.

**D.   INTERVIEW WITH D.H.**

24. As part of the investigation, SA Halliwell reviewed a copy of D.H.'s valid Florida driver's license for the purposes of verifying his PII. The name, social

security number, and address associated with D.H.'s valid Florida driver's license matched the information asserted on the D.H., PA PPP application. However, the photo of D.H. on the Florida driver's license submitted with the D.H., PA PPP application is not a photo of the real D.H.

25. D.H. was interviewed on or about May 14, 2021. D.H. confirmed that the personal identifiers used to create both the D.H., PA PPP application and the Subject Account at First Internet Bank belonged to him. D.H. further affirmed that he did not apply for the D.H., PA PPP loan or any other PPP loan, nor did he authorize anyone at any time to submit an application under his identity for the PPP program funding. In addition, D.H. stated that the email address associated with the D.H., PA PPP application (floridaprofitcorp@gmail.com) was not his email address.

26. During the interview, D.H. stated that he is the owner of D.H., PA and is the sole employee.

27. D.H. further explained that he does not have an account with First Internet Bank and did not authorize anyone to open the Subject Account with First Internet Bank using his identity.

E. **THE SUBJECT ACCOUNT**

28. The Subject Account was opened on or about June 6, 2020, and is held in the name of D.H. The account was created using D.H.'s stolen name, date of birth, and social security number.

29. On or about June 6, 2020, the Subject Account received an ACH

deposit in the amount of $.01 and received no other deposits until on or about July 6, 2020, when it received an ACH deposit of $1,893,292.00, representing proceeds from the fraudulent D.H., PA PPP loan. The account did not receive any other deposits, although it did accrue monthly interest.

30. On or about May 14, 2021, First Internet Bank placed a temporary hold on the account. At that time, the Subject Account contained $1,899,663.50, which included the fraudulently obtained PPP funds plus the accrued interest.

31. On about May 28, 2021, $1,899,663.50 was seized by law enforcement from the Subject Account pursuant to a seizure warrant signed, by United States Magistrate Judge Sean P. Flynn, Case No. 8:21-MJ-1532-SPF.

## CONCLUSION

32. As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds constitute, or are derived from, proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud) and are, therefore, subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, pursuant to Supplemental Rule G, the United States requests that this Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b)(1) for the Defendant Funds, initiate a process of forfeiture against the

Defendant Funds, and duly notice all interested parties to appear and show cause why the forfeiture should not be decreed. The United States further requests the Court order the Defendant Funds forfeited to the United States for disposition according to law and grant the United States such other and further relief as this case may require.

Dated: July 6, 2021    Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:   /s/
SUZANNE C. NEBESKY
Assistant United States Attorney
Fla. Bar No. 59377
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Tel:   (813) 274-6000
E-mail: suzanne.nebesky@usdoj.gov

## VERIFICATION

I, Bryan Halliwell, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Department of Homeland Security, United States Secret Service (USSS), and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other USSS agents.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 6TH day of July, 2021

Bryan Halliwell
Special Agent
United States Secret Service